## LUNSCHEN v. BARNHART et al.

Evidence in an action for damages for fraud in a real estate transaction held sufficient to sustain a verdict for defendants.

Under Code Civ. Proc. § 257, which provides that exceptions to the giving or refusing of instructions may be taken at any time before the entry of final judgment in the case, and rule 21 of the rules of practice in the circuit courts, which declares that all exceptions to the charge of the court must be taken and called to the attention of the court before the jury retires unless the court shall otherwise direct, an exception to the charge not brought to the attention of the court at any time before the rendition of judgments is too late.

Where the court has fully instructed the jury as to the issues presented by the pleadings, its failure to instruct on a theory of the case not presented by any request for special instructions thereon is not error.

Whiting, J., dissenting.

(Opinion filed May 31, 1911.)

Appeal from Circuit Court, McCook County. Hon. Joseph W. Jones, Judge.

Action by Ricklef Lunschen against William Barnhart and another. Judgment for defendants, and plaintiff appeals. Affirmed.

*Robertson & Dougherty*, for appellant. *Bierntski & Pflaum* and *E. H. Wilson*, for respondents.

CORSON, J. This is an appeal by the plaintiff from a judgment entered upon a verdict of the jury in favor of the defendants, and from an order denying a new trial. The action was instituted by the plaintiff to recover of the defendants the sum of $600 alleged to be due him by reason of transactions resulting in the sale of a farm by him to the defendant Hart in October, 1908. It is alleged in the complaint that in October, 1908, and for a long time prior thereto, the defendant Barnhart was engaged in the business of real estate agent in McCook county, in this state, and that prior to that date he had been employed by this plaintiff to sell, or procure a purchaser for, the premises described in the complaint; that on or about the 16th day of October, 1908, and while the said defendant Barnhart was acting as the agent of this plaintiff, and pretending and assuming to act as such agent, he procured a purchaser for the premises described at an agreed price of $7,000; that thereupon, and after the sale by the said defendant Barnhart as the agent for and on behalf of this plaintiff to one Frank Tempe for the said sum of $7,000, the defendant Barnhart and defendant Hart, the said Hart then well knowing that the defendant Barnhart was acting as the agent for and on behalf of the plaintiff in the sale of said premises, for the purpose of and with intent to cheat, wrong, and defraud this plaintiff, did combine, conspire, and confederate together to defraud this plaintiff out of $600 by falsely and fraudulently representing to the plaintiff that said land was sold for $6,400 to the defendant Hart, and the said plaintiff believing said representation and statement to be true, and relying upon the truth thereof, did enter into a contract with and sell and convey the said land to the defendant Hart for the sum of $6,400, whereupon the said defendants, in furtherance of said wrongful purpose and conspiracy, did thereupon immediately convey said real estate to said Frank Tempe in pursuance of the agreement in that behalf between him and the defendant Barnhart, and did receive from the said Frank Tempe the purchase price aforesaid of $7,000, and appropriated and converted to their own use the difference between the said sum of $6,400 and $7,000, to the damage of the plaintiff in the sum of $600, and the plaintiff demands judgment for that sum. The defendants' answer is a

general denial, except the admission that plaintiff transferred the property to said Hart in consideration of the sum of $6,400.

Two questions only are presented by this appeal, viz.: That the evidence is insufficient to justify the verdict; and error in the instructions of the court to the jury.

It is contended by the appellant that the evidence in this case established the fact that the defendant Barnhart was employed by the plaintiff as his agent, and that, having found a purchaser for the premises able and willing to pay $7,000 as consideration therefor, he, in violation of his duty as such agent, induced the plaintiff to transfer said property to the defendant Hart for the sum of $6,400, and immediately thereafter caused the said Hart to transfer said property to said Tempe, the real purchaser, for the sum of $7,000, the said defendant Barnhart and defendant Hart retaining the $600, the difference between the price actually received by the plaintiff and the price for which the property was actually sold.

It is contended, however, by the respondents that the evidence failed to prove the facts as alleged by the plaintiff, and that the verdict under the evidence was clearly right.

The plaintiff, being called as a witness testified in substance that he resided at Tipton, Iowa, and that he is acquainted with defendant Barnhart, but not with the defendant Hart; that in 1907 he went into a real estate office in Salem, and talked with gentlemen there with reference to the sale of land; that the three persons present were Charles Marks, the defendant Barnhart, and himself; that he said he would like to sell a piece of land, and told them the land was worth $45 an acre, but that, if he could not do any better, he would take $42.50; that, if cash was paid, all right, and if not, he would take $2,000 cash, and let the balance go upon mortgage; that he told them he would give $1 an acre commission; that he came to Salem some time in October, 1908; that he met Barnhart as he came from the train about 5 o'clock and had a conversation with him; that Barnhart told him he had gotten a buyer for his land; that plaintiff asked him who it was; that he told him it was Mr. Hart, in the bank; that he asked him how much he could get; that he replied he could not get more than

$6,400; that he and Barnhart went into the bank and had a conversation with Hart, and, after supper, they went back to the bank again; that defendants Hart and Barnhart and Charley Marks and himself were present; that he tried to get a little more, but they would not give more, and witness told them they could have it for $6,400; that a contract was drawn up, signed by the witness and Hart, and witnessed by Barnhart; that they paid him $500 at the time on the contract, and settled with him about March 1, 1909; that at the time he first met the defendant Barnhart in 1908 he told the witness he would like to have the commission alone, to which the witness replied he could not do that; that he told him Marks got just as much interest as he got, as witness understood it, and the commission must be divided because he listed to both of them. On cross-examination, the witness testified that he had not talked with Barnhart before going to Lundy's office in 1907, and that the reason he went into Lundy's office was that he was acquainted with Marks, and knew that he stayed there most of the time; that he was an old acquaintance of Marks, and was in there talking with him, and Barnhart sat right there too; that he talked with Marks at the time and Barnhart talked; that he did not remember anything that Mr. Barnhart said, except he said when he found a buyer he would show the land; that both of them said that. He was then asked the following question: "Q. As a matter of fact, wasn't you in that office simply because Marks was an old friend of yours, and you got to talking to him about this farm, and stated you were willing to sell it at a certain price? A. Yes; I did. I told them, if they got a buyer, it was all right, that I was ready to sell it. I was ready to sell it to any one who was willing to pay the price, and I told them so. When I met Mr. Barnhart as I was coming from the train, he told me he had a buyer for the land, and that he would like to have the commission alone and cut Mr. Marks out. I said: 'I cannot say that. I will pay my dollar.'"

It is disclosed by the evidence that on the following day defendant Hart entered into a contract to transfer the property to the said Tempe for the consideration of $7,000, which was subse-

quently paid, and the deed executed by the said Hart to the said Tempe.

The defendant Barnhart, as a witness in his own behalf, testified, in substance, as follows: In 1907 and 1908 he was farming and looking after his farm near Salem, but lived in town most of the time; that he never had any business transaction with the plaintiff until he sold his place to Mr. Hart; that he had a transaction regarding the land with Frank Tempe; that he showed Mr. Tempe the land; that Tempe had been around there several times, and witness understood that he was looking for a piece of land, and that one afternoon he asked him if he had found what he wanted, and he said that he had not; that witness told him that he thought he could please him, and for him to go out and see; that he heard the land was for sale and what it could be bought for, and he talked with Tempe about it; that he told Tempe it could be bought for $7,000, or a little more, but perhaps $7,000; that he took him out and showed him the land and offered to sell it to him; that he did not have any talk with the plaintiff, the owner of the land, up to that time; that he was in Mr. Lundy's office a great many times in 1907, and remembered seeing the plaintiff there; that he heard the plaintiff tell Charley Marks what he would sell the land for, said he would take about $45 an acre; that the witness did not take any part in that conversation; that the plaintiff did not talk to him, and that he did not pay much attention to what was said; that he did not say anything to plaintiff about the land at that time, and plaintiff did not say anything to him about it; that his conversation was entirely with Marks; that that was the only way he knew the land was for sale; that he went out with, and showed the land to, Tempe and talked with him about the price of it; that they then went to the bank and saw Mr. Hart and talked with him about the land; that afterward, and on the same day, he saw the plaintiff and had a talk with him on the streets of Salem; that he told him he had a buyer for his land and who it was; that he took him into the bank, and that the plaintiff made a contract with Hart, and Mr. Hart bought it; that there was no talk about commission either before or after he went into the bank; that he did not think plaintiff said anything about commission, and he knew he did not; that

plaintiff never asked witness or told him to find a purchaser for the land, never had an agreement with the plaintiff concerning the sale of this land. Witness, on cross-examination, further testified: When he was talking with the plaintiff on the evening of the 16th, he did not tell him about the contract with Tempe. Both of these contracts are dated November 16, 1908. That he told him he had a purchaser and told him it was Mr. Hart. That at that time he did not say anything to plaintiff about selling the land to Tempe for $7,000. That at that time he had a contract with Mr. Tempe, and had the contract with him at the time he took the plaintiff into the bank that night to sell the land to Hart.

Defendant Hart testified, when called as a witness by the plaintiff, in substance, as follows: That he carried out the terms of the contract between Mr. Barnhart and Mr. Tempe by deeding the land to Tempe. That at the time of the execution of Exhibit B—the contract between the plaintiff and himself—he did not know of the contract between Barnhart and Tempe. He had not seen it at that time.

Mr. Marks, referred to by the plaintiff and defendant Barnhart in their testimony as being in Lundy's office in 1907 at the time of the conversation detailed by the plaintiff, and in the bank when the sale was made to Hart, was not called as a witness by either party.

It will be observed that the conversation detailed by the plaintiff in his evidence as occurring between him and Marks and the defendant Barnhart occurred some time in the fall of 1907, and that the transaction resulting in the sale of the property occurred on the 16th of October, 1908. Nothing, so far as the record discloses, occurred between the alleged conversation in 1907 and the closing up of the transaction by the sale of the property to Hart in October, 1908, between the plaintiff and said Barnhart. It is disclosed by plaintiff's evidence that he was a resident of Iowa, and it does not appear from the evidence that he was in Salem at any time after the alleged conversation in the fall of 1907, and until the transaction on the 16th of October, 1908. And it is not disclosed by the evidence what relation, if any, existed between the defend-

ant Barnhart and Mr. Marks, or what relation, if any, was sustained between Marks and Lundy, and the only relation sustained by Barnhart to Lundy, as disclosed by the evidence, is that on two or three occasions he took parties out to see land for Lundy for which he received no consideration, as he did not succeed in making sales to any of the parties taken out by him.   The defendant Barnhart having denied all the statements made by the plaintiff, except that he was present in Lundy's office and heard the conversation, or a part of it, between the plaintiff and Marks and thereby learned the price of the land, there was a direct conflict in the evidence between the plaintiff and defendant Barnhart.   The jury, by their verdict having found in favor of the defendants, must have necessarily found the defendant Barnhart's evidence to be true as to the statement of what occurred in Lundy's office in the fall of 1907, and found that the plaintiff was mistaken in his statement as to the conversation occurring there.   Upon the evidence, it is difficult to sustain the plaintiff's theory that Barnhart was in fact his agent, and that, therefore, he violated any duty imposed upon him by law as the agent of the plaintiff.   If Barnhart was not in fact the agent of the plaintiff, he was under no obligation to disclose to him his transaction in contracting to sell the property to Tempe for $7,000, and in inducing the plaintiff to transfer the property to Hart for the sum of $6,400.   Undoubtedly Barnhart was endeavoring to secure the transfer of the property to Hart for the sum of $6,400 in order that it might be transferred to Tempe for which Tempe was to pay the $7,000, and that Barnhart or he and Hart secure by the transaction the $600 over and above the price received by the plaintiff.   It will be further noticed that, so far as the record discloses, the $1 per acre commission was never paid by the plaintiff to either Marks or Barnhart.

[1] The jury being the judges as to the credibility of the witnesses and the weight to be given to the evidence, and there being sufficient evidence to sustain their verdict, the judgment of the court below must be affirmed unless the court committed error in its instructions to the jury.

[2] It is contended by the respondents that no exception was taken to the charge of the court prior to the entry of judgment in

this case, and therefore no exception to such charge can be considered by this court on this appeal. By rule 21 of the rules of practice in the circuit court, as prepared by this court, it is provided: "All requests for instructions must be made before the argument to the jury is begun, and all exceptions to the charge of the court must be taken and called to the attention of the court before the jury retires, unless the court shall otherwise direct." And it appears by the abstract that the exception set out in the bill of exceptions in reference to the exceptions taken to the charge of the court is as follows: "The foregoing exception to the charge was not brought to the attention of the court before the jury retired, or at any time before the rendition of judgment, and the court made no direction in regard thereto." It is contended by the appellant that the rule of the court above quoted is in derogation of section 257 of the Code of Civil Procedure of 1903, which provides as follows: "* * * Exceptions to the giving or refusing any instruction, or to its modification or charge, may be taken at any time before the entry of final judgment in the case." But without passing upon the question as to the conflict of rule 21 promulgated by this court, and section 257 of the Code, the exception was taken too late, as it appears from the statement in the abstract before referred to that the exception to the charge was not brought to the attention of the court at any time before the rendition of judgment, hence the exception taken by the counsel for the appellant was too late, either under the section of the Code, or the rule of the court above quoted. It is further contended by the appellant that the court erred in failing to charge the jury that: "The relation of principal and agent does not depend upon an express appointment and acceptance thereof, but it may be implied from the words and conduct of the parties and the circumstances of the case."

[3] But as counsel did not request any instruction in regard to this theory of the case, and the court had fully instructed the jury as to the issues presented by the pleadings, the court committed no error in its failure to give the instructions suggested by the counsel. It has uniformly been held by this court that where the trial court instructs the jury as to all the issues involved in the case,

if the counsel desires any special instructions for the purpose of presenting any theory of his case not referred to by the court in its general charge, he must specifically request such instruction. In Belknap v. Belknap, 20 S. D. 482, 107 N. W. 692, this court in its opinion says: "No special instructions were submitted to the court or requested by the plaintiff, and therefore, if the court's intructions are not as full and complete as they should have been, the plaintiff has no right to complain'—citing a number of decisions of this court and the courts of other states.

Finding no error in the record, the judgment of the circuit court and order denying a new trial are affirmed.

WHITING, J., dissenting.